IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ELLA MAE WHETSTONE,

    Plaintiff,

v.                                      CASE NO. 1:14-cv-156-MW-GRJ

ALACHUA COUNTY SCHOOL
BOARD,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and Motion to Strike Plaintiff's Punitive Damages Claim. (Doc. 21.) Plaintiff has responded in opposition to the motion and, therefore, the motion is ripe for review. (Doc. 22.) Upon due consideration, the undersigned recommends that the motion to dismiss be granted in part and denied in part.

### I. ALLEGATIONS OF THE COMPLAINT

Plaintiff alleges she was employed as a bus driver with the Alachua County School Board ("School Board") for thirty-four years. During her employment she was never reprimanded and received satisfactory performance evaluations. She also received letters acknowledging her commitment to the profession. At some point, Plaintiff enrolled in the Deferred Retirement Option Program (DROP). Plaintiff's DROP date began March 1, 2010, with a separation from service date of February 28, 2015.

On Monday, April 22, 2013, Plaintiff received a "24-hour meeting notification" for the following day at 10:30 a.m., regarding her job performance. On this date, Mr. Deas,

Supervisor Manager of Operations, recommended termination of Plaintiff's employment "without evidence of the alleged video." The reason for the recommendation was that on Friday, April 19, 2013, Plaintiff allegedly passed a bus while students were unloading at Norton Elementary in Gainesville. Also in attendance at this meeting was Beverly Finley, Human Resources Supervisor II, and Sandi Caulkins, ACEA Union Representative. The meeting was rescheduled until the next day, April 24, at 9:30 a.m., because Plaintiff and the Union representatives had not been able to review the video in question, which showed Plaintiff's alleged safety violation. Later that day, Plaintiff was informed by James Baker, a Union representative, that although the video equipment on Plaintiff's bus was not working properly the alleged incident was recorded by another driver. Plaintiff signed the Record of Progressive Discipline form.

On April 24, at 9:30 a.m., Plaintiff met with Mr. Deas, and Ms. Finley, but was informed that Ms. Caullkins would not be able to attend the meeting because she was ill. During the meeting Mr. Deas discussed the options of termination, resignation, and retirement with Plaintiff. Deas stated that if Plaintiff decided to fight the termination she would lose her pension. Plaintiff was provided with a Separation of Service form and was told to go to personnel and speak with someone in reference to completing paperwork for retirement because that may be her best option. Plaintiff made an appointment with Ms. Suzie Ballman, Retirement Specialist.

Plaintiff met with Ms. Ballman on April 30, and she provided the following forms: Florida Retirement System Pension Plan Deferred Option Program Termination Notification, Retiree Insurance Continuation Request, Insurance Payroll Deduction Authorization Form, and a Separation of Service form which required Plaintiff's

Case No: 1:14-cv-156-MW-GRJ

signature. Plaintiff signed the forms but stated she was not sure about separation because she had not spoken to the Union representative. Plaintiff then asked for a copy of the Separation of Service form, which she had signed – but was otherwise incomplete because Will Calsam, the Human Resources Manager, was not there to "explain, complete, and sign" the form. Plaintiff's understanding was that Ms. Ballman would not submit the other retirement documents until Plaintiff could meet with the Union representative and Mr. Calsam. Plaintiff alleges at that point she "began to wonder what happened to the official form she completed on April 24, 2013 at the transportation office with Mr. Deas['s] signature in which she considered void at that point. Maybe it was misplaced and she needed to complete another official form of separation with Mr. Will Calsam if she decided to officially retire."

Plaintiff found out later that the retirement paperwork was submitted and finalized with the Separation of Service form dated April 30, 2013 with Mr. Calsam's signature only – not Mr. Deas's signature, even though Plaintiff had not officially decided to retire because she wanted the input of the Union. Subsequently, Plaintiff filed a complaint with the Florida Commission on Human Relations (FCHR) and Equal Employment Opportunity Commission (EEOC) alleging that the School Board had discriminated against her.

Plaintiff alleges that the School Board submitted false statements and documents in their response to her discrimination case. She further alleges that the Separation of Service form dated April 30, 2013, was not official because it did not have the signatures of both Mr. Deas and Mr. Calsam, and the earlier form, dated April 24, 2013, was also insufficient because it only had Mr. Deas's signature.

*Case No: 1:14-cv-156-MW-GRJ*

The parties mediated the case on November 2, 2013, but reached an impasse. Later that day, Plaintiff was asked by a Union representative about attending the Christmas party, and at the same time learned that all current drivers were given a memo dated November 21, 2013 about the Safe Driving Plan. Plaintiff alleges that this memo made Plaintiff feel she was discriminated against, and she amended her discrimination case.

In February of 2014, a finding of "no cause for discrimination" was made in Plaintiff's FCHR case. Plaintiff did not filed a Petition for Relief because she was waiting on the final determination from the EEOC. On April 1, 2014, Plaintiff attended a meeting with James Baker, Union representative, about her reinstatement and other issues. Mr. Deas was also in attendance, along with Scott Ward, Assistant Superintendent of Finance, Mr. Calsam, and James Speer, Transportation Director. Plaintiff's sister attended with the Plaintiff.

After the meeting, on April 16, 2014, Plaintiff received a written decision from Mr. Ward. In the written decision Ward determined that on April 24, 2013, Plaintiff initiated the decision to retire and that effective May 1, 2014, Plaintiff could apply for openings in transportation just like any other applicant.

On June 12, 2014., Plaintiff received a Notice of Dismissal and Notice of Right to Sue from the EEOC. Plaintiff requested to view the alleged video and her personnel file. A meeting with Mr. Lyons, Deputy Supervisor Superintendent, Human Resources was set for July 21, 2014. Plaintiff arrived with Mr. Baker, the Union Representative, and discovered that the gold copies of the Separation of Service forms were not in her files as she was told. Further Plaintiff says the video evidence did not prove Plaintiff

was driving the bus in question.  On July 24, 2014, Mr. Lyons contacted Plaintiff and explained that because her signature was on the retirement forms, they were still valid even if they were copies, not the originals.

Plaintiff alleges that this conduct constituted intentional employment discrimination because Plaintiff is African-American and is an older individual.  Plaintiff also alleges that she was unlawfully coerced into retirement, and that Defendant intentionally misrepresented the facts so that she would sign the Separation of Service forms.  As a result, Plaintiff alleges that she suffered emotional distress, loss of enjoyment of life, and lost wages and benefits.  As relief, Plaintiff requests back pay, front pay, value of lost benefits, lost value of retirement, and damages for her emotional distress, as well as fees and costs.  Doc. 18.

In addition to her statement of facts, Plaintiff also attached several documents to her Amended Complaint, including her FCHR Employment Complaint of Discrimination, and EEOC Charge of Discrimination.  Doc. 18 at 13-21.

## II.  STANDARD OF REVIEW

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom.  *See, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir.1994).  Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits.  Fed R. Civ. P. 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court articulated a two-pronged approach for evaluating a motion to dismiss under Rule 12(b)(6): The court must first determine what factual allegations in the complaint are entitled to a presumption of veracity, and then assess whether these facts give rise to an entitlement for relief. In determining whether factual allegations are entitled to the presumption of truth, the Court stated that it was not whether the facts are "unrealistic or nonsensical" or even "extravagantly fanciful," but rather it is their conclusory nature that "disentitles them to the presumption of truth." *Id.* at 679. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007). "While the pleadings of *pro se* litigants are 'liberally construed,' they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. Saint Lucie County School Bd.,* 2010 WL 3995824, **1 (11th Cir. 2010) (unpublished) (citations omitted) (applying pleading standards of *Iqbal* and *Twombly* to *pro se* complaint).[1]

### III. DISCUSSION

**A. Federal Rules of Civil Procedure 8 and 10**

Defendants request dismissal of Plaintiff's Amended Complaint for failing to comply with Federal Rules of Civil Procedure 8(a) and 10(b). These rules provide, respectively:

> Fed. R. Civ. P. 8(a): Claim for Relief. A pleading that states a claim for relief must contain:

---

[1] Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

*Case No: 1:14-cv-156-MW-GRJ*

> 1. (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.
>
> . . .
>
> Fed. R. Civ. P. 10(b): Paragraphs; Separate Statements. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

The Court acknowledges that Plaintiff's Amended Complaint is not a model of clarity, and does not organize the claims in numbered paragraphs, as required by the Rule.  However, construing the Amended Complaint liberally, as the Court is required to do, the Amended Complaint is sufficiently clear to advise Defendant of the nature of the claim against it.  As such, the Court determines it is unnecessary to recommend dismissal on these grounds.

### B.  Age Discrimination Claim

Defendant requests dismissal of Plaintiff's age discrimination claim in Count I of the Amended Complaint because by failing to raise an age discrimination claim in her EEOC or FCHR complaints Plaintiff failed to exhaust this claim. Further, because Plaintiff failed to exhaust this claim Defendant also says she failed to comply with a condition precedent to maintaining an age discrimination suit in this Court. Lastly,

Defendant says that at this point the statute of limitations period has passed and, therefore, Plaintiff cannot cure this deficiency.

The Age Discrimination in Employment Act (ADEA) makes it unlawful for an employer "to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623.  Plaintiffs in ADEA cases bear the burden of proving that the employer unlawfully discriminated against them.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

An employee who wishes to sue his employer for age discrimination must first file an administrative charge of discrimination with the EEOC in order to exhaust administrative remedied prior to filing suit.  Pursuant to 29 U.S.C. § 626(d) , such a charge must be filed within 180 days, or within 300 days if it is a case to which § 633(b) applies, as is the case in Florida*.  McKelvy v. Metal Container Corp.*, 854 F.2d 448, 451-53 (11th Cir. 1998) (discussing extension to 300 days in Florida); *Hipp v. Liberty Nat. Life Ins. Co.,* 252 F.3d 1208, 1217 (11th Cir. 2001).

Plaintiff has attached her EEOC and FCHR Employment Complaint of Discrimination to her Amended Complaint.  Doc. 18 at 13-15.  These forms reveal that Plaintiff checked only the "race" box – not the age box, on her FCHR Complaint.  Doc. 18 at 13. Plaintiff checked only the "race" and "retaliation" boxes on her EEOC Complaint form – again, not the "age" box.  Doc. 18 at 15.  Simply filing a complaint alleging some form of discrimination – and not checking the relevant boxes – is insufficient to exhaust administrative remedies.  *Jones v. Bank of America*, 985 F.

Supp. 2d 1320 (M.D. Fla. 2013) (holding the plaintiff failed to exhaust her disability discrimination claim because "Plaintiff explicitly alleges disability determination for the first time in the Complaint filed in the instant lawsuit . . . In her Charge, she did not check the disability box, nor did she allege that she was discriminated against on the basis of her disability.") Furthermore, in the EEOC and FCHR complaint forms Plaintiff did not simply fail to check the relevant box, she also failed to allege that she was discriminated against on account of her age in the bodies of either of those Complaints.

Accordingly, because Plaintiff never raised any claim of age discrimination in her EEOC complaint Plaintiff failed to exhaust this claim. And because Plaintiff alleges the discriminatory conduct occurred in April, 2013—more than two years before she filed the complaint in this case—the statute of limitations has now passed so that Plaintiff cannot now go back and exhaust this claim. *See Hearn v. International Business Machines*, 2013 WL 5499610 (M.D. Fla. Oct. 1, 2013) (noting that "[w]hen the discriminatory act takes place in a deferral state such as Florida, the plaintiff must file a charge with the state agency within 300 days of the last discriminatory act to be timely for purposes of Title VII, the ADA, and the ADEA . . . and within 365 days for purposes of the FCRA." (citations omitted.))

In sum, because Plaintiff failed to exhaust her age discrimination claim, and the statute of limitations has now passed, Plaintiff's age discrimination claim is due to be dismissed with prejudice.

### C. Race Discrimination Claims

Defendants contend that Plaintiff's race discrimination claims in Count I of her

Amended Complaint are due to be dismissed because she has failed to state a claim.

Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a); *Bass v. Bd. of County Com'rs, Orange County, Fla.*, 256 F.3d 1095, 1103 (11th Cir. 2001).  Plaintiffs bear the burden of proving that the employer discriminated against them unlawfully.  *Hinson v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000).

Plaintiff mentions her race in two places in the Amended Complaint.  First, she states that in November of 2013, after her employment with Defendant ended, and after she attended a mediation with Defendant's representatives, she discovered that current employees received a memo about safe driving, and "at this point [she] felt retaliation and unfair employment practices occurred and completed an amended compl[ai]nt based on unlawful employment practices and retaliation due to race."  Doc. 18 at 6.  The second mention of her race is in her Statement of Claims, in which Plaintiff asserts that she is African-American, and "[b]ecause of the Plaintiff['s] race and age the Defendant was in violation of Plaintiff['s] Civil Rights."  Doc. 18 at 11.

Liberally construing Plaintiff's complaint the Court interprets Plaintiff's Amended Complaint as purporting to bring a claim for retaliation[2] and a claim for disparate

---

[2] While Plaintiff does not flesh-out a retaliation claim in her amended complaint Plaintiff did check the "retaliation" box on her charge of discrimination. Doc. 18 at 15. The Court therefore will assume Plaintiff also meant to bring a retaliation claim in this lawsuit.

treatment.

Turning first to Plaintiff's claim for retaliation the Court concludes that Plaintiff has failed to state a claim.  To establish a *prima facie* claim for retaliation under Title VII, Plaintiff must establish that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3)  there was a causal link between the two events.  *Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 856 (11th Cir. 2010).  Plaintiff has failed to allege any statutorily protected activity in which she was engaged that resulted in an adverse employment action. Thus, there are not allegations suggesting a causal link between statutorily protected conduct and her termination or "forced retirement."

Further, although Plaintiff says in her Amended Complaint that the safe driving memorandum provided to current employees after she left employment constituted retaliation, this allegation is insufficient to give rise to a claim for retaliation. The safe driving memorandum was provided to all current employees and Plaintiff does not allege the memorandum identified her or even singled her out in any way.  Indeed, given that Plaintiff already had left employment with the School Board, it is hard to imagine how this memorandum impacted her in any way.  Accordingly, any claim for race-based retaliation must be dismissed.

With regard to Plaintiff's claim for disparate treatment, however, the complaint liberally construed does state a claim for relief. In the EEOC and FCHR discrimination forms, attached to the Amended Complaint, Plaintiff states that the white driver of another bus "had done the same thing on more than one occasion and she was not

terminated." Doc. 18 at 13.  Plaintiff also alleges the discrimination forms that a different white driver "has currently been placed on administrative leave for the same violation." Doc. 18 at 14.  While not a work of art, these allegations are sufficient to raise a claim for disparate treatment based upon race.

To establish a prima facie case for disparate treatment, a plaintiff must show that "(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated [white] employees more favorably; and (4) she was qualified to do the job." *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008), quoting *EEOC v. Joe's Stone Crab, Inc.* 220 F.3d 1263, 1286 (11th Cir. 2000).  Plaintiff has alleged that she is African-American, and thus a member of a protected class.  Plaintiff also alleges that she was a bus driver for Defendant for many years without issue, and was coerced into retiring in lieu of termination due to an alleged safety violation.  And while Plaintiff has not explicitly alleged in her Amended Complaint that she was a victim of disparate treatment it is fairly evident from her EEOC and FCHR discrimination complaints that Plaintiff alleged a claim of disparate treatment in her administrative proceedings.  In liberally construing the Amended Complaint the Court must take into account information attached to the Amended Complaint.  By attaching her EECO and FCHR discrimination complaints to the Amended Complaint, it is evident that Plaintiff is alleging that Defendant treated similarly situated white employees more favorably from her. The Court therefore concludes that Plaintiff has sufficiently alleged a case of disparate treatment sufficient to proceed beyond the motion to dismiss stage. *See Lane v. Guaranty Bank*, 552 Fed.Appx. 934 (11th Cir.

2014) (holding that it was not error for a district court to consider attachments to a plaintiff's complaint in dismissing a case); *Jordan v. Miami-Dade County*, 439F. Supp.2d 1237 (S.D. Fla. 2006) (holding that attachments to a complaint are considered part of the pleading, including for purposes of passing on a motion to dismiss).

Accordingly, for these reasons, Defendant's motion to dismiss should be granted with regard to Plaintiff's retaliation claim but denied with regard to Plaintiff's claim for disparate treatment based upon her race.

### D. State Law Claims

Defendants argue that Plaintiff failed to comply with the pre-suit notice and waiver requirements of Fla. Stat. § 768.28(6). Fla. Stat. § 768.28(6)(a) requires a plaintiff to present the claim in writing to the appropriate agency or subdivision, and also to present the claim in writing to the Department of Financial Services (DFS) within three years after the claim accrues. Section 768.28(6)(b) provides that pre-suit notice is a condition precedent to maintaining an action. *See Public Health Trust of Miami-Dade County v. Acanda*, 71 So.3d 782, 784-85 (Fla. 2011). Furthermore, a complaint must contain an allegation of the notice. *Menendez v. North Broward Hospital District*, 537 So.2d 89, 91 (Fla. 1988) (noting that under "section 768.28(6), not only must the notice be given before a suit may be maintained, but also the complaint must contain an allegation of such notice." (citing *Commercial Carrier Corp. v. Indian River County*, 371 So.2d 1010 (Fla. 1979))).

Plaintiff has not alleged that she complied with § 768.28 in her Amended Complaint, nor is there evidence in the attachments to the Amended Complaint that

Plaintiff did so.  And in Plaintiff's response to Defendant's motion to dismiss Plaintiff simply states that she "disagree[s]" with defense counsel but does not provide any information suggesting that she complied with the pre-suit notice requirements.

Accordingly, because Plaintiff failed to provide the Defendant with a Notice of Intent to Sue as required by § 768.28(6)  Plaintiff's state law tort claims against Defendant are due to be dismissed.  While dismissal for failing to provide pre-suit notice typically would be without prejudice so that Plaintiff could amend her complaint to allege compliance with the notice requirements, *see Fletcher v. City of Miami*, 567 F. Supp. 1389, 1393 (S.D. Fla. 2008), the Court should not do so her because Defendant is immune from suit for intentional torts such as intentional misrepresentation and Plaintiff has failed to state a claim for duress.

With regard to Plaintiff's state law claim for duress a plaintiff must show "(1) that one side involuntarily accepted the terms of another, (2) that circumstances permitted no other alternative, and (3) that said circumstances were the result of coercive acts of the opposite party." *McLaughlin v. State, Dep't of Natural Res.*, 526 So. 2d 934, 936 (Fla. 1st Dist. Ct. App. 1988).

Plaintiff alleges that Mr. Deas, Transportation Supervisor, "used his undue influence" to coerce Plaintiff into signing a Separation of Service form and retire, by stating that she might lose her pension if she elected to fight her termination.  Plaintiff's allegations, however, go on to allege that after meeting with Mr. Deas, and after she signed a Separation of Service form (which according to Plaintiff is not the one on file), she elected to make an appointment with human resources to discuss her options. And

while she was with Ms. Ballman, the retirement specialist, Plaintiff alleges that she signed another Separation of Service form dated April 30, 2013.  According to Plaintiff she signed this form when Mr. Deas was not present. Further, she alleges that the Separation of Service form on file only had Mr. Calsam's signature and not Mr. Deas's signature. Thus, because Plaintiff alleges that when she signed the second official form Mr. Deas was not present there are no facts alleged suggesting that Plaintiff was under duress when she signed in signing the form she alleges is the official form.  Indeed, Plaintiff alleges that she went to speak with Ms. Ballman about all of her options and there are no allegations that Ms. Ballman coerced Plaintiff into signing any forms. Accordingly, Plaintiff's allegations are insufficient to state a claim for duress under Florida law.

Plaintiff also purports to alleged claims for intentional misrepresentation.  Doc. 18 at 11-12.  "'Intentional misrepresentation of fact' is the intentional act (done with the aim of carrying out the act) of making a false or misleading statement about something." *Nehme v. Smithkline Beecham Clinical Labs., Inc.*, 863 So. 2d 201, 205 (Fla. 2003).  By its very definition, it is an intentional tort.  The problem for Plaintiff is that Defendant is a county school board, and as a state agency, it is immune from suit, because Florida has not waived its sovereign immunity for intentional torts committed by employees. *Board of Public Instruction of Broward County v. State ex rel Allen*, 219 So. 2d 430, 432 (Fla. 1969) (noting that school board is a state agency); *Williams v. Miami Dade County,* 859 F. Supp. 2d (S.D. Fla. 2012) (holding a county is immune from the liability of its employees arising from willful or intentional torts) *reversed in part on*

*other grounds*; *see also* Fla. Stat. § 768.28(9)(a) (providing that the exclusive remedy for damage suffered as a result of an act of an employee of the state or any of its subdivisions shall be against the governmental entity, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property); *Samedi v. Miami-Dade County*, 134 F.Supp. 2d 1320, 1353-54 (S.D. Fla. 2001) (equating "wilful and wanton conduct" to "recklessness" for purposes of statute.)

Accordingly, Plaintiff's state law tort claims should be dismissed with prejudice.

**E.  Motion to Strike Plaintiff's Punitive Damages Claim**

Lastly, Defendant requests that the Court strike Plaintiff's claim for punitive damages because Plaintiff is not entitled to recover punitive damages for state law tort claims against Defendant, or for any claims under Title VII or the ADEA.

The only claim in the Amended Complaint that can proceed is Plaintiff's claim for disparate treatment based upon race.  Although Title VII, as amended by the Civil Rights Act of 1991, authorizes both compensatory and punitive damages, a party is not entitled to recover punitive damages from a governmental entity, like the School Board. *Garrett v Clarke County Bd. Of Educ.*, 857 F. Supp. 949, 953 (S.D. Ala. 1994); 42 U.S.C. § 1981a(b)(1).[3]  Accordingly, because punitive damages are not available

---

[3] That provision provides: a complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual. 42 U.S.C. § 1981a(b)(1) (emphasis added.)

against a governmental entity under Title VII, Defendant's motion to strike Plaintiff's claim for punitive damages is due to be granted.

## IV.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

1.   Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and Motion to Strike Plaintiff's Punitive Damages Claim, Doc. 21, should be **GRANTED in part and DENIED in part.**

2.   Plaintiff's claim for disparate treatment based upon race should be permitted to proceed.  All other claims should be **DISMISSED with prejudice**.

3.   Defendant's Motion to Strike should be **GRANTED**, and Plaintiff's claim for punitive damages should be stricken from her Amended Complaint.

**IN CHAMBERS, at Gainesville, Florida,** this 30th day of June, 2015.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.